UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

DDR CONSTRUCTION SERVICES, INC.,

                                    Plaintiff,                       09 Civ. 09605 (RJH)

            -against-
                                                                    **MEMORANDUM OPINION
SIEMENS INDUSTRY, INC., SIEMENS                                      AND ORDER**
ENERGY & AUTOMATION, INC.,
SCHLESINGER-SIEMENS ELECTRICAL, A
Joint Venture d/b/a SCHLESINGER-SIEMENS
ELECTRICAL LLC, SCHLESINGER
ELECTRICAL CONTRACTORS, INC., FIRST
KEYSTONE CONSULTANTS, INC., ALISON
CONSULTING GROUP, INC., JACOB LEVITA,
ROBERT SOLOMON, JEFFREY DEURLEIN,
JOSEPH GUDDEMI, ROBERT RIGSBY,
HARRY VOLANDE, AND FRANK
KRUTEMEIER, and JOHN DOES 1-50,

                                    Defendants.

------------------------------------------------------------

Richard J. Holwell, District Judge:

        In this case plaintiff DDR Construction Services, Inc. ("DDR") sues several of its

former associates in the construction, electrical subcontracting, and consulting industries

in New York for violations of the Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. §§ 1961 *et seq*. ("RICO"), as well as for fraud, breach of fiduciary duty, and

several other state law claims.  Currently pending are four motions to dismiss filed by

different groups of defendants; DDR's cross-motions to strike, to dismiss counterclaims,

and for sanctions; and DDR's cross-motion for leave to seek sanctions.  DDR has also

submitted a letter application seeking leave to file an amended complaint.  For the

reasons that follow, defendants' motions are GRANTED; DDR's cross-motion to strike

and to dismiss, and for sanctions, is GRANTED IN PART and is DENIED IN PART; DDR's cross-motion for leave to seek sanctions is DENIED; and, DDR's letter application is DENIED.

## I.  FACTUAL SETTING

For the purposes of the present motions, the following facts, drawn from the complaint and the documents incorporated by reference therein, are taken as true. Because the complaint incorporates by reference a litigation involving many of the same parties and factual issues ongoing in the Supreme Court of the State of New York, County of Queens, *First Keystone Consultants, Inc. v. DDR Constr. Servs.*, No. 27095 2005 (N.Y. Sup. Ct.) (hereinafter the "Queens Action"), the pleadings and decisions in that matter are also described and considered.  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("Our review is generally limited to the facts and allegations that are contained in the complaint and in any documents that are [] incorporated into the complaint by reference. . . .  But we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss." (internal citations omitted)).

## A.  The Parties

Plaintiff DDR is a New Jersey corporation that provides consulting and other services to entities in the construction industry.  (Compl. ¶¶ 8, 33.)  Specifically, DDR brings together other construction industry entities in order to facilitate bidding, assists in arranging bids, and manages construction projects.  (*Id.* ¶¶ 21, 25-26, 33-34.)  As of

2001, DDR's vice president, Clifford Weiner ("Weiner"), had affiliations with several construction-industry entities operating in the New York area, including defendants Schlesinger Electrical Contractors, Inc. ("Schlesinger"), and First Keystone Consultants, Inc. ("First Keystone").  (*Id.* ¶ 21.)  In 2004, Weiner was also vice president of Schlesinger.  (*Id.* ¶ 32.)

Defendants Siemens Energy & Automation, Inc. ("SEA"), and Siemens Industry, Inc. ("SII"), (collectively "Siemens"), are Delaware corporations that provide electrical, engineering, and automation solutions in the construction industry.  (*Id.* ¶ 9; Siemens' Defs.' Mem. at 4.)[1]  DDR originally negotiated with Siemens because DDR sought to join forces with an established electrical contractor in submitting bids on "public improvement construction contracts" in New York.  (Compl. ¶ 20.)  Defendants Jeffrey Deurlein ("Deurlein"), Harry Volande ("Volande"), and Frank Krutemeier ("Krutemeier"), are officers and/or employees of Siemens, and are Georgia residents. (*Id.* ¶¶ 15, 17, 18.)  Defendant Schlesinger-Siemens Electrical ("SSE"), doing business as Schlesinger-Siemens Electrical, LLC, is a company formed by contractual agreement between Siemens and Schlesinger to bid on New York City Department of Environmental Protection ("NYCDEP") "water pollution facility electrical upgrade" projects in New York.  (*Id.* ¶¶ 32-34.)  The company was formally established in August 2004, by an "Operating Agreement"; is organized under the law of Delaware; and is authorized to conduct business in New York as a limited liability company.  (*Id.* ¶¶ 14, 35.)  Under the Operating Agreement, Siemens and Schlesinger would split SSE profits

---

[1] In 2009, SEA merged into SII and dissolved.  The parties do not dispute that any arguments advanced on behalf of or against either refer to both.  (*See* Siemens Defs.' Mem. at 2 n.1; Compl. ¶ 9; Pl.'s Opp'n at 2 n.1.)  Thus any further references to either SEA or SII will be made only to "Siemens," unless specifically noted.

50%-50%, but Siemens retained control over SSE with a 51% member interest as compared to Schlesinger's 49% interest.  (*Id*. ¶¶ 36, 48; Siemens Defs.' Mem. at 5 n.6.) SII, SEA, Deurlein, Volande, Krutemeier, and SSE are hereinafter collectively referred to as the "Siemens Defendants."  Defendant Robert Rigsby ("Rigsby"), another Georgia resident, was general counsel to Siemens during the relevant period.  (Compl. ¶ 16.)

Defendants Schlesinger and Alison Consulting Group, Inc. ("Alison") are New York corporations involved in the construction industry in New York, mostly in contracting, consulting, or accounting roles.  (*See id*. ¶¶ 1, 10-12, 21, 23, 94-95, 150A.) Defendant First Keystone is a Pennsylvania corporation also involved in the construction industry in New York.  (*See id*.)  Defendant Jacob Levita ("Levita") is the president of Schlesinger.  (*Id*. ¶ 11.)  Defendant Robert Solomon ("Solomon") is the principal officer of First Keystone.  (*Id*. ¶ 10.)  Defendant Joseph Guddemi ("Guddemi") is a principal of Alison.  (*Id*. ¶ 12.)  Levita, Solomon, and Guddemi are all New York residents.  (*Id*. ¶¶ 10-12.)  Schlesinger and Levita are hereinafter collectively referred to as the "Schlesinger Defendants."  First Keystone and Solomon are hereinafter collectively referred to as the "First Keystone Defendants."  Alison and Guddemi are hereinafter collectively referred to as the "Alison Defendants."[2]

Not a party to this action is SFD Associates ("SFD").  SFD was a joint venture of Schlesinger, First Keystone, and DDR, formed in August, 2004, simultaneously with SSE.  (*Id*. ¶ 36.)

---

[2] SSI, SEA, SSE, Deurlein, Volande, Krutemeier, Schlesinger, Levita, Alison, Guddemi, and Rigsby are hereinafter collectively referred to as the "Moving Defendants."  As they did not move to dismiss the complaint, First Keystone and Solomon are excluded from that list.

**B.  The Parties' Relationships and the Litigation in Queens**

Between 2001 and 2004, Weiner assisted in arranging four construction project

bids for Siemens, to be performed in collaboration with various New York construction

industry entities including Schlesinger and First Keystone.  (*Id.* ¶ 21.)  By the spring of

2004, Weiner apparently desired to create a more formal relationship with Siemens.  In

August of 2004, therefore, two companies were formed.  The first was SSE, a

combination of Siemens and Schlesinger authorized to do business in New York as a

limited liability company.  (*Id.* ¶ 14).  The second was SFD, a joint venture among

Schlesinger, First Keystone, and DDR, through which those entities would (1) assist in

the bidding and performing of Schlesinger's part of SSE projects, and (2) split any profits

Schlesinger earned from those projects in equal thirds.  (*Id.* ¶ 36; Weiner Aff. Ex. A ¶¶ 1,

21).[3]  Under SSE's Operating Agreement, Schlesinger was permitted to make two

appointments to SSE's five-member board of managers; one of those appointments was

Weiner.  (Compl. ¶¶ 51-52.)

In January of 2004, before either SFD or SSE had been created, Schlesinger, First

Keystone, and DDR collaborated in performing electrical work for an NYCDEP project

on Coney Island (the "Coney Island Project" or the "Coney Island Partnership").  (*Id.* ¶¶

23, 25.)  The bid for this project was formally made by a fifty-fifty joint venture between

Schlesinger and First Keystone; First Keystone and DDR had a separate agreement by

which they would split equally First Keystone's profits on the project.  (*Id.* ¶ 25.)  In the

spring of 2005, DDR accused Schlesinger and First Keystone of withholding some

---

[3] Though the original SFD "Joint Venture Agreement" mentioned work only on a single SSE project (the
"Manhattan Pumping Station" project), (Weiner Aff. Ex. A at 10), SSE was unsuccessful in bidding on that
project and the parties continued using SSE and SFD, in the same structure and pursuant to the same
agreements, to bid on other NYCDEP projects.  (Compl. ¶¶ 79, 107.)

$300,000 allegedly owed to it.  (*Id*. ¶ 28.)  DDR demanded an accounting, but no accounting was performed.  (*Id*. ¶¶ 29-30.)

Thereafter, Schlesinger and First Keystone allegedly began scheming to oust DDR from SFD.  (*Id*. ¶¶ 89-91, 96.)[4]  First, on September 14, 2005, First Keystone and Schlesinger requested DDR to pay $100,000 to SFD as a "capital call" by the next day; and when DDR neither attended the next day's meeting nor came up with the funds, Schlesinger and First Keystone informed DDR that it would be excluded from SFD profits.  (*Id*. ¶¶ 119, 121-122.)[5]  Second, on September 16, 2005, Weiner was replaced on the SSE board of managers by Levita, either after his resignation or after being forced out by Schlesinger and First Keystone.  (*Id*. ¶¶ 100-101, 136.)[6]  Siemens, and specifically, Deurlein, allegedly knew of Schlesinger and First Keystone's wrongful conduct but took no action to stop it.  (*Id*. ¶¶ 105, 115-116, 126, 133.)[7]

---

[4] DDR alleges that in addition to the breakdown of its relationship with Schlesinger and First Keystone caused by the parties' disputes concerning the Coney Island Project, the two companies schemed to oust DDR from SFD (1) because thereby their profits from any SSE projects would increase; and (2) in retaliation for DDR's objection to SSE's hiring of defendant Guddemi to run SSE's financial operations. (Compl. ¶¶ 93-94).

[5] First Keystone and Schlesinger allegedly did not make the required capital contribution until November 4, 2005, and then only at fifty percent of what had been demanded. (Compl. ¶ 127.) DDR alleges it was unable to meet the capital call because Schlesinger and First Keystone had wrongfully withheld Coney Island Project profits. (*Id*. ¶ 132.)

[6] The circumstances of Weiner's leaving the SSE board of managers are confused. The complaint suggests both (1) that Weiner was forcefully removed by Schlesinger and First Keystone; and (2) that Weiner resigned voluntarily, though in protest. (*Compare* Compl. ¶¶ 100-101 ("Schlesinger, Levita, [First Keystone] and Solomon operated in concert to unlawfully attempt to 'terminate' DDR's interest in SFD . . . and removed DDR from the [SSE] Board of Managers. In furtherance of this scheme, on September 16, 2005, Robert Solomon distributed an email to SEA stating that, effective immediately, [Levita] . . . was to replace Weiner.") *with* Compl. ¶ 136 ("[Schlesinger and First Keystone] alleg[e] that Weiner's resignation in protest from [SSE's] Board of Managers . . . somehow justified their actions . . . . [Weiner's] resignation from the Board was meant to do nothing more than to alert [Siemens] to the [Coney Island project dispute].").)

[7] DDR alleges that Deurlein refrained from preventing DDR's wrongful ouster because Schlesinger and First Keystone had promised him a percentage of certain money-laundering schemes then ongoing. (Compl. ¶¶ 105, 133.)

6

The parties entered litigation in December of 2005 when the First Keystone Defendants sued DDR in New York Supreme Court in Queens.  First Keystone (1) alleged that DDR had obtained certain profits from the Coney Island Project by fraud; and (2) sought a declaratory judgment that DDR was not entitled to share in profits SFD obtained through Schlesinger's membership interest in SSE.  (*Id*. ¶ 31); *see First Keystone Consultants, Inc. v. DDR Constr. Servs.*, No. 27095 2005, 880 N.Y.S.2d 223 (Table), 2008 WL 5431379 at *1 (N.Y. Sup. Ct. Dec. 15, 2008).  DDR counterclaimed against the First Keystone Defendants and asserted third-party claims against the Schlesinger Defendants for *inter alia* breach of contract, breach of fiduciary duty, and unjust enrichment; and also sought accountings and dissolutions of the Coney Island Project and of SFD.  (Kalish Decl. Ex. S ¶¶ 87-132.)  DDR also asserted these claims, as well as fraud, conspiracy to commit fraud, constructive trust, tortious interference with contractual relations, and tortious interference with prospective economic advantages, against SSE.  (Bhoumik Decl. Ex. B (the "Queens Compl.") ¶¶ 144-195); *First Keystone Consultants, Inc. v. DDR Constr. Servs.*, No. 27095 2005, 901 N.Y.S.2d 906 (Table), 2009 WL 3415282, at *1 (N.Y. Sup. Ct. Oct. 5, 2009).

On November 24, 2008, the Supreme Court, Queens County (Hart, J.) granted DDR "summary judgment as to DDR's entitlement to an accounting" of SFD. (O'Connor Decl. Ex. F at 4.)  Then on November 26, 2008, that court enjoined First Keystone and Schlesinger from disbursing SFD funds.  (*Id*. at 14.)  Almost one year later, on October 5, 2009, the court dismissed all of DDR's claims against SSE on the ground that DDR's pleading failed to state a cause of action pursuant to N.Y. C.P.L.R. 3211(a)(7), and dismissed DDR's breach of fiduciary duty claim against SSE on the

additional ground that SSE had a defense founded upon documentary evidence pursuant

to N.Y. C.P.L.R. 3211(a)(1).  *First Keystone*, 2009 WL 3415282, at *3-4.  As to the

fiduciary duty claim, the court held that the SSE Operating Agreement and the SFD Joint

Venture Agreement demonstrated that no fiduciary relationship existed between SSE and

DDR.[8]  *Id*. at *3.  After dismissing the remaining causes of action for failing to state

claims under N.Y. C.P.L.R. 3211(a)(7), the court denied DDR's cross-motion for an

order appointing a referee to conduct an accounting of SFD stating that DDR had already

had ample opportunity for discovery.  *Id*. at *5.

On June 22, 2010, the Appellate Division, Second Department, affirmed the

Supreme Court's dismissal of all claims against SSE.  *First Keystone Consultants, Inc. v.

DDR Constr. Servs.*, 74 A.D.3d 1135, 1137-39 (N.Y. App. Div. 2010).[9]  However, the

Second Department reversed the lower court's denial of the appointment of a referee for

an accounting, stating: "the referees appointed by the Supreme Court in its prior

_____

[8] Justice Hart wrote:

> [DDR has] failed to adequately plead facts showing the existence of a fiduciary
> relationship between SSE and DDR. . . . While a partner owes a fiduciary duty to other
> partners and while a member of a limited liability company also owes a fiduciary duty to
> other members, DDR did not allege sufficient facts showing that it was a partner or a
> fellow member with SSE.  Moreover, the documentary evidence in this case such as
> SSE's operating agreement and SFD's joint venture agreement establishes that DDR
> lacked such status.  DDR also failed to allege sufficient facts showing that SSE and SFD
> were de facto joint venturers. . . . The court notes that DDR's allegations are insufficient
> to state a claim as a third-party beneficiary of SSE's operating agreement.

*First Keystone*, 2009 WL 3415282, at *3-4 (internal citations omitted).

[9] As to the dismissal of DDR's fiduciary duty claim against SSE, the Second Department stated:

> [DDR's] pleading failed to allege facts sufficient to make out a claim that SSE agreed to
> share, with DDR, the profits and losses of certain contracts . . . . Additionally, the
> documentary evidence, which included SSE's operating agreement, conclusively
> established that DDR was not a member of SSE. . . . DDR's argument that it was an
> intended third-party beneficiary of the SSE operating agreement was also refuted by the
> documentary evidence.

*First Keystone*, 74 A.D.3d at 1137.

orders . . . never conducted such an accounting.  DDR was a partner in SFD Associates, and is entitled to an accounting of that joint venture."  *Id*. at 1139.[10]


## C.  SSE's Alleged Criminal Acts

In 2005, SSE won bids for at least three NYCDEP projects including the "26th Ward Project," the "Wards Island Project," and the "Croton Facility Project."  (Compl. ¶¶ 80-83, 85.)  However, in preparing its bids and performing the contracts, SSE allegedly engaged in broad-scale fraudulent activity "caus[ing] enormous harm to the profitability of the [projects]."  (*Id*. ¶ 179.)  For example, DDR alleges that SSE manipulated New York City's Minority Business Entity ("MBE") program, New York City Administrative Code § 6-129, by creating sham transactions in order to claim MBE credit.  According to DDR, Siemens and Schlesinger[11] caused an electrical subcontractor, J&R Rey Electrical ("JR"), to accept funds from Schlesinger and use those funds to purchase electrical

---

[10] DDR states several times in its opposition to defendants' motions to dismiss that it "has been awarded summary judgment on it right to an accounting of the Principal Contracts."  (Pl.'s Opp'n at 8.)  The term "Principal Contracts" refers to SSE's contracts with NYCDEP.  (Compl. ¶ 1.)  It seems beyond dispute, however, that DDR was *not* granted an "accounting of the Principal Contracts," but instead was granted, if anything, accountings of the Coney Island Partnership and/or of SFD Associates.  The Nov. 26 order states only: "The branch of the cross motion which is for summary judgment as to DDR's entitlement to an accounting, is granted."  (O'Connor Decl. Ex. F at 2 (internal quotation marks omitted).)  DDR does not include a copy of any motion it has filed in the Queens Action; and Justice Hart's Oct. 5, 2009 decision, denying DDR's then-pending cross-motion for accounting, is equally vague: "That branch of the cross motion which is for an order appointing a referee to conduct an accounting, etc. is denied.  In view of the opportunities which [DDR] ha[s] had to conduct extensive discovery in this case which has been pending since 2005, the appointment of a referee at this time is unwarranted."  *First Keystone*, 2009 WL 3415282, at *5.  Again, no related motion or cross-motion is provided.  However, in modifying Justice Hart's Oct. 5, 2009, decision, the Second Department stated: Justice Hart erred "in denying that branch of the cross motion of [DDR] which was to appoint a referee to conduct an accounting *of the third-party defendant SFD Associates*. . . . DDR was a partner in SFD Associates, and is entitled to an accounting *of that joint venture*."  *First Keystone*, 74 A.D.3d at 1139 (emphasis added).  Whether through its entitlement to an accounting of SFD, DDR also has property rights in SSE's contracts with NYCDEP *might* be an open question of law; however, on the present record, the Court cannot blindly accept that DDR was ever granted a right, specifically, to an accounting of those contracts.

[11] Along with the remaining Siemens Defendants, Levita, First Keystone and Solomon, Guddemi, and Rigsby.  (Compl. ¶¶ 154.)

equipment from Siemens. (Compl. ¶¶ 152-155.) SSE then counted JR's costs in those purchases against its MBE requirements. (*Id*.) SSE thus charged at least $320,000 of fraudulent expenses incurred by JR in equipment purchases against the 26th Ward Project, along with at least $100,000 in legal fees in preparation for litigation with JR and "enormous" amounts in preparation for investigations by "several" State agencies. (*Id*. ¶¶ 150(a), 158, 159.) In order to secure JR's cooperation, Siemens, Schlesinger, Deurlein, and Levita allegedly put financial pressure on JR and forced JR to hire SSE's accountant Guddemi, nominally as an electrician, but in reality as a "fox guarding the henhouse." (*Id*. ¶¶ 188-192.) The over $86,000 paid to Guddemi was also charged against the 26th Ward Project between January 2006 and January 2008. (*Id*. ¶ 194.) Additionally, through his position Guddemi was able to secure "enormous" profits for his company, Alison, which were all hidden from the Internal Revenue Service. (*Id*. ¶ 195).

DDR also alleges that SSE, Siemens, Schlesinger, and First Keystone defrauded NYCDEP by forging documents in order to meet NYCDEP's requirement that SSE employ a "Master Electrician" full time. (*Id*. ¶¶ 160-163.) Allegedly, between July of 2006 and April of 2008, SSE paid one Bronislav Ostrovsky ("Ostrovsky") at least $36,000 to serve as SSE's Master Electrician, but Ostrovsky was actually employed by another contractor, Five Star Electric, Inc., during that period. (*Id*. ¶¶ 163-170.) Not only were SSE's payments to Ostrovsky charged to the 26th Ward Project so as to diminish the Project's value, but, as with the MBE scheme, SSE has incurred "extraordinary costs and fees" due to State investigations of the Ostrovsky payments. (*Id*. ¶¶ 150(c), 166.) Finally, DDR makes several more general allegations including that SSE management along with Schlesinger and First Keystone (1) wrongfully diverted SSE

funds to themselves; (2) intentionally falsified and confused SSE records; and (3) engaged in widespread nepotism.  (*See id*. ¶¶ 182A-F.)

**D.  This Litigation**

As described *supra*, on October 5, 2009, Justice Hart dismissed all of DDR's claims pending against SSE in the Queens Action.  *First Keystone*, 2009 WL 3415282, at *3-4.  Then on November 17, 2009, DDR filed its complaint in this action.  The complaint includes eight counts.  First is a RICO claim.  Then come several state law claims, confusingly based sometimes on one, sometimes on another, sometimes on both, and sometimes on neither version of its allegations as to the structure of the business entities so far described.  The two structures can be summarized as follows:

- The "DDR-in-SFD Entity":  In this version, described, *inter alia*, in Count Two, compl. ¶ 235, SSE is a joint venture.  The joint venturers in SSE are Siemens and Schlesinger.  SFD is another joint venture.  The joint venturers in SFD are Schlesinger, First Keystone, and DDR.  By virtue of the "Pre-Bidding and Joint Venture Agreement of SFD Associates," DDR, as well as Schlesinger and First Keystone, each own one-third of Schlesinger's one-half property interest in SSE.

- The "DDR-in-SSE Entity":  In this version, described, *inter alia*, in Count Three, compl. ¶ 237, SSE is again a joint venture.  But the joint venturers in SSE are Siemens, Schlesinger, First Keystone, and DDR.  The existence of SFD is ignored in this version of DDR's claims.

The following two charts represent these entities graphically:





DDR's first count is for civil RICO, 18 U.S.C. § 1964(c), against defendants

SEA, Schlesinger, First Keystone, Deurlein, Volande, Krutemeier, Levita, Solomon,

Rigsby, and Guddemi.  DDR alleges that those defendants ran SSE's affairs though a

pattern of racketeering activity in violation of 18 U.S.C. § 1962(c); and additionally that

Siemens is separately liable for maintaining its interest in and controlling SSE through a

pattern of racketeering activity in violation of 18 U.S.C. § 1962(b). (Compl. ¶¶ 223-224.) As predicate racketeering activity, DDR points to the JR scheme, the payments to Guddemi and Ostrovsky, and the uses and transfers of the funds obtained thereby. (*Id.* ¶¶ 216-221.) DDR claims as damages the financial harm caused to SSE's NYCDEP Projects by this conduct. (*Id.* ¶ 227.) These harms include (1) the payments and losses charged against the 26th Ward Project; (2) the legal costs incurred in preparing for and defending State investigations; and (3) the risk that those investigations threaten the very existence of SSE. (*Id.* ¶¶ 222, 228-230.)

DDR's second count is for a declaratory judgment that "[SSE] is and was a joint venture between [Siemens] and Schlesinger with the constituent venturers in SFD each owning 1/3 of the property interest of Schlesinger in the [SSE] venture." (*Id.* ¶ 235.)

Third, DDR alleges state law breach of fiduciary duty claims against defendants Siemens, Schlesinger, and First Keystone. (*Id.* ¶¶ 241-242.) The duty arises from DDR's alleged rights as a joint venturer with Siemens, Schlesinger, and First Keystone in SSE. (*Id.* ¶ 237 ("As joint venture partners, [Siemens], Schlesinger, and [First Keystone] owed common law and statutory duties of fidelity and loyalty to DDR, . . . to not deprive DDR of the benefits of its partnership rights in SSE.").)

Fourth, DDR asserts fraud against defendants SEA, Schlesinger, First Keystone, Levita, and Solomon and claims not less than $10 million in damages. (*Id.* ¶¶ 244, 250.) This fraud was that those defendants omitted information relevant to their alleged racketeering activity in documents provided to DDR in both its capacity (1) as joint venturer in SSE; and (2) as counterclaimant in the Queens Action. (*Id.* ¶¶ 244-247.) The

13

at least $10 million in damages allegedly resulted from DDR and Weiner's time and effort spent working on SSE bids and projects.  (*Id*. ¶ 248.)

Fifth, DDR asserts unjust enrichment against all defendants, claiming that defendants wrongfully distributed to themselves as much as $3 million from SSE, and that those funds should be returned to SSE and redistributed to SSE's joint venturers.  (*Id*. ¶¶ 252-255.)  DDR alleges that all defendants are liable because "they participated in and profited from the wrongful expropriation of joint venture funds, and obtained money that in equity and good conscience should not have been obtained."  (*Id*. ¶ 256.)

Sixth, DDR asserts "civil conspiracy" against SEA, Schlesinger, First Keystone, Deurlein, Volande, Krutemeier, Schlesinger, Levita, First Keystone, Solomon, Rigsby, and Guddemi.  (*Id*. ¶ 259.)  Without identifying any specifics, the complaint essentially states that those defendants had a common and malicious intent to harm SSE and DDR, and that those defendants carried out the acts supporting the first five counts.

Seventh, DDR asserts conversion against all defendants, claiming that defendants wrongfully distributed to themselves an undetermined amount of funds from SSE, and that those funds should be placed in constructive trust for the benefit of DDR.  (*Id*. ¶¶ 264-270.)

Eighth and finally, DDR asserts negligence and negligent entrustment against SEA.  DDR alleges that Siemens managed SSE's finances—funds  to which DDR was entitled to a one-sixth portion pursuant to the SFD and SSE agreements—and that Siemens failed to "prevent and detect" the conduct already described.  (*Id*. ¶¶ 272-279.)  DDR claims this negligence "created an unreasonable risk of harm to DDR's property

interests" in the NYCDEP Projects, and that that allowed upwards of $1.4 million to be embezzled from SSE.

On December 24, 2009, the First Keystone Defendants filed their answer to the complaint and counterclaimed against DDR for (1) breach of contract entitling the First Keystone Defendants to $50,000 they were required to provide SSE when DDR failed to meet the September 2005 capital call; (2) fraud and breach of fiduciary duty entitling them to $75,000, which represents one-sixth of an amount SSE would allegedly have saved in equipment purchases had Weiner not delayed certain purchases; and (3) for the costs the First Keystone Defendants have expended in defending this suit. (First Keystone Defs.' Answer ¶¶ 201-203.) The Siemens Defendants, the Schlesinger Defendants, the Alison Defendants, and Rigsby have each filed their own motion to dismiss. In response, DDR opposed the motions to dismiss and additionally cross-moved (1) to strike the First Keystone Defendants' answer and dismiss their counterclaims; (2) for sanctions against the First Keystone Defendants; and (3) for leave to seek sanctions against the Schlesinger Defendants. DDR has also submitted a letter seeking leave to amend its complaint in light of documents allegedly newly revealed resulting from certain Freedom of Information Act requests and rulings in the pending state court accounting proceeding.

## II. DISCUSSION

### A. Defendants' Motions to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009). The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only a "plausible claim for relief survives a motion to dismiss." *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). Thus courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (internal quotation marks omitted).

Four motions to dismiss are currently pending, covering all defendants except First Keystone and Solomon. The Court addresses each of the several asserted grounds for dismissal in turn.

#### 1. Procedural Issues

##### a. *Colorado River* Abstention

All moving defendants argue that the "*Colorado River* abstention doctrine" requires this Court to dismiss the present action because DDR is litigating its entitlement to the anticipated profits from SSE's NYCDEP contracts in the Queens Action. Defendants argue, "[a] ruling in the Queens Action that DDR is not entitled to any profits

from the SFD partnership would moot the instant lawsuit since DDR would be unable to sustain a claim for damages."  (Siemens Defs.' Mem. at 12.)

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  Unlike other abstention doctrines related to "considerations of proper constitutional adjudication and regard for federal-state relations," *Colorado River* abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Id*. at 817.  However, "[a]lthough duplicative litigation as between federal courts is ordinarily to be avoided, . . . the pendency of an action in [] state court is no bar to proceedings concerning the same matter in [] Federal court . . . [due to] the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citing *Colorado River*, 424 U.S. at 817).  Thus *Colorado River* abstention permits dismissal only in the rare case when (1) the relevant state and federal actions are "concurrent" or "parallel" and (2) evaluation of a six-factor test weighs in favor of abstention.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  The circumstances permitting dismissal are extremely limited, and "the balance [must be] heavily weighted in favor of the exercise of jurisdiction."  *Id*.; *Jamaica Hosp. Med. Ctr. v. United Health Grp., Inc.*, 584 F. Supp. 2d 489, 493 (E.D.N.Y. 2008).  "The Court's task is not to find some substantial reason for the *exercise* of jurisdiction; rather, the task is to ascertain whether there exists exceptional

circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Jamaica Hosp.*, 584 F. Supp. 2d at 495 (emphasis in original).

The threshold question in *Colorado River* abstention analysis is whether the state and federal actions at issue are "parallel." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."); *Farkas v. D'Oca*, 857 F. Supp. 300, 303 (S.D.N.Y. 1994) ("If the state and federal proceedings are not concurrent *Colorado River* abstention is unquestionably not appropriate."). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer*, 146 F.3d at 118 (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988)). "Complete identity of parties and claims are not required." *Stone v. Patchett*, No. 08 Civ. 5171, 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009). However, resolution of the state action must "dispose of *all* claims presented in the federal case." *Id*. (emphasis in original).[12]

Defendants' arguments for parallelism are (1) that DDR asserts fraud and fiduciary duty claims both here and in the Queens Action; and (2) that resolution of the question whether DDR is entitled to SFD profits, a question pending in the Queens

---

[12] "If the cases are parallel, courts consider a six-factor test to determine if abstention is appropriate." *Suffolk Federal Credit Union v. Cumis Ins. Soc., Inc.*, ___ F. Supp. 2d ___, 2010 WL 2925492, at *2 (E.D.N.Y. 2010). Those factors are: "(1) jurisdiction over a res or property; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law applies; and (6) whether the state forum will adequately protect the rights of the party seeking to invoke federal jurisdiction." *Dore v. Wormley*, 690 F. Supp. 2d 176, 191 (S.D.N.Y. 2010). "No one factor is necessarily determinative, and a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Suffolk Federal*, 2010 WL 2925492, at *2 (internal quotation marks omitted; citing *Moses H. Cone*, 460 U.S. at 16).

Action, will dispose of DDR's claims in this case.  (Siemens Defs.' Mem. at 13-14.)
These arguments are misplaced.

First, lawsuits are not parallel, and *Colorado River* abstention is not appropriate,
simply because some factual and legal issues involved in a later RICO action in federal
court overlap with the issues involved in an earlier state court action.  *Wells Fargo
Century, Inc. v. Hanakis*, No. 04-CV-1381, 2005 WL 1523788, at *9 (E.D.N.Y. June 28,
2005) ("The mere existence of overlapping issues does not make the causes parallel."
(citing *Merrill Lynch, Pierce, Fenner & Smith v. Young*, No. 91 Civ. 2923, 1994 WL
88129, at *4 (S.D.N.Y. Mar. 15, 1994))).  When "the nature of the claims" in question
differs, cases are not parallel despite "the fact that both actions arise out of a similar set of
circumstances."  *Farkas*, 857 F. Supp. at 303 (no parallelism when wife's RICO claim
alleged that marital assets were wrongfully diverted to husband's mistress even though
wife sought same property in state court action); *see also New Beckley Mining Corp. v.
Int'l Union, United Mine Workers of America*, 946 F.2d 1072, 1074 (4th Cir. 1991) (no
parallelism when conduct supporting mining company's RICO claim against union was
identical to conduct supporting mining company's state action against union for
violations of state law because issues and claimed remedies were different); *Carr v.
Cimino*, No. 4:01 CV 01258, 2001 WL 1471759, at *4 (N.D. Ohio Oct. 22, 2001) (no
parallelism when, in addressing RICO claim, court confronted legal issues different from
those confronted by state court in earlier state court partnership accounting action
between same parties and involving same facts).

Though this action involves much of the same factual material as the suit in state
court in Queens, this action's claims do not involve substantially the same legal issues as

the claims remaining in the Queens Action; nor would resolution of the Queens Action dispose of all of DDR's claims in this case.  The mechanics and legal issues involved in the accounting of SFD, for example, turn on questions entirely different from those governing the Court's disposition of the RICO and other claims here.  Moreover, how an accounting of SFD would resolve DDR's ability to claim an ownership right *in SSE* (discussed *infra*) is unclear and defendants make no argument supporting that position. The Siemens Defendants argue that if Justice Hart "determines that DDR is not entitled to any of Schlesinger's profits, DDR will not have suffered any injury."  (Siemens Defs.' Mem. at 14.)  However, DDR claims injuries here beyond those characterized by Siemens as arising out of Schlesinger's profits.  (See Compl. ¶ 250 (claiming $10 million in fraud damages), ¶ 253 (claiming $3 million in unjust enrichment damages).)  Though related, the "nature of the claims" here and in the Queens Action is different.  This action is, therefore, not parallel to the Queens Action, and *Colorado River* abstention is unwarranted.  *See Stone*, 2009 WL 1108596, at *14.

Abstention under *Colorado River* is unwarranted for the additional reason that invocation of that doctrine would dismiss several defendants—namely SEA, SII, Deurlein, Volande, Krutemeier, Rigsby, Alison, and Guddemi—who are not parties to this Queens Action.  Though abstention does not require that the parties in the relevant suits be identical, when dismissal of the federal proceeding would leave a defendant free from *any* proceeding on issues in question, abstention is unwarranted.  *Wells Fargo*, 2005 WL 1523788, at *9 (noting that though state and federal actions "involve the same loans extended by Plaintiff, the fact that Hanakis is not a party to the State Court Action is a distinction far more significant than the similarity of subject matter. . . . [T]hat Hanakis

would no longer be part of *any* action were the Court to abstain" precludes a finding that the two actions are parallel.).

Defendants, collectively, cite three cases in discussing parallelism. None persuades the Court that this and the Queens Action are parallel. In *In re Converse Tech., Inc. Derivative Litig.*, No. 06-CV-1849, 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) the court found parallelism lacking because (1) it, as a federal court, had exclusive jurisdiction over plaintiff's Exchange Act claims so that those claims could not be brought at all in the state action; and (2) certain federal action defendants were not defendants in the state action. 2006 WL 3193709, at *2-3, & n.1. It is true that RICO claims, unlike those under the Exchange Act, are maintainable in state court, *Tafflin v. Levitt*, 493 U.S. 455, 457-58 (1990); but nowhere does *Converse* suggest any rule that federal actions invoking federal law not exclusively confined to federal jurisdiction are parallel to state actions in which the relevant claims might have been brought. The court in *Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, LLP.*, 420 F. Supp. 2d 228 (S.D.N.Y. 2005), another Exchange Act case, found parallelism lacking for the same reason. Finally, in *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.*, 850 F. Supp. 176 (E.D.N.Y. 1994), the court found plaintiff's federal action to enforce a New York Supreme Court judgment parallel to plaintiff's state action to do the same. 850 F. Supp. at 178-79. *Bernstein* is distinguishable, however, as the facts, causes of action, legal issues involved, and relief sought were identical between the two actions there, and no federal defendant was not named in the state action. *Id*. at 183.

Defendants also cite several cases to argue that "[c]ourts routinely dismiss [federal] cases on grounds that they are nothing more than a tactical response to an

adverse ruling in a parallel state proceeding." (Siemens Defs.' Mem. at 16.)  In each case

cited, however, the court found the federal and state suits parallel.  *See American*

*Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 88 (2d Cir. 1988); *Telesco v. Telesco Fuel*

*& Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985); *Mann v. Alvarez*, No. 96

Civ. 2641, 1996 WL 545540, at *1-2 (S.D.N.Y. Sept. 20, 1996); *Weinstock v. Cleary,*

*Gottlieb, Steen & Hamilton*, 815 F. Supp. 127, 131 (S.D.N.Y. 1993); *Best v. City of New*

*York*, 654 F. Supp. 208, 210 (S.D.N.Y. 1986).  Because this Court finds the federal and

state proceedings not parallel, whether DDR's disappointment in the Queens Action

motivated DDR to bring this suit is irrelevant.

Because the Court finds this action not parallel to the Queens Action, it need not

consider whether the six *Colorado River* factors weigh in favor of dismissal of this case.


### b.  *Res Judicata*

The Siemens and Alison Defendants, and Rigsby, argue that DDR's claims are

barred by principles of *res judicata*.  The argument invokes Justice Hart's October 5,

2009 dismissal of all claims then pending in that case against SSE.  (Siemens Defs.'

Mem. at 21.)

*Res judicata*, or claim preclusion, prevents a party from relitigating claims

brought to final judgment on the merits in an earlier action.  *Bd. of Managers of 195*

*Hudson Street Condominium v. Jeffrey M. Brown Assoc.*, 652 F. Supp. 2d 463, 472

(S.D.N.Y. 2009).  The party invoking *res judicata* must demonstrate that "an earlier

decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction,

(3) in a case involving the same parties or their privies, and (4) involving the same cause

of action." *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009).  A judgment or decision not on the case's merits, however, has no preclusive effect for *res judicata* purposes.  *Joseph v. HDMJ Restaurant, Inc.*, 685 F. Supp. 2d 312, 316 (E.D.N.Y. 2009) (citing *Cloverleaf Realty of New York, Inc. v. Town of Wawayanda*, 572 F.3d 93, 95 (2d Cir. 2009)).

Whether a state court judgment was or was not on a case's merits is determined by the rendering state's law.  *Cloverleaf Realty*, 572 F.3d at 95 ("Federal courts must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").  Under New York law, a dismissal pursuant to N.Y. C.P.L.R. 3211(a)(7), for failure to state a cause of action, is presumptively not on a case's merits and lacks *res judicata* effect; indeed a Rule 3211(a)(7) dismissal is only on a case's merits if the rendering court explicitly says so. *Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98 Civ. 1544, 1998 WL 474075, at *3, *5 (S.D.N.Y. Aug. 10, 1998) ("C.P.L.R. § 3211(a)(7) . . . decisions are not on the merits for res judicata purposes unless the court expressly says so."); *see also Pereira v. St. Joseph's Cemetery*, 78 A.D.3d 1141, 912 N.Y.S.2d 121, 122 (N.Y. App. Div. 2010) ("[A] dismissal for failure to state a cause of action is not on the merits and, thus, will not be given res judicata effect."); *Djoganopoulos v. Polkes*, 67 A.D.3d 726, 729 (N.Y. App. Div. 2009) (dismissal under Rule 3211(a)(7) for inadequate factual pleading in the complaint "not on the merits, and the doctrine of res judicata does not apply").[13]

---

[13] Unlike Rule 3211(a)(7) dismissals, the equivalent Federal Rule dismissals under Rule 12(b)(6) are dismissals on the merits and have preclusive effect for *res judicata* purposes.  *Berrios v. New York City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("As the sufficiency of a complaint to state a claim on which relief may be granted is a question of law, the dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects." (internal citations omitted)).

Justice Hart's October 5, 2009 opinion, dismissed all of DDR's claims then pending against SSE.  But other than for breach of fiduciary duty, Justice Hart dismissed all the claims solely pursuant to N.Y. C.P.L.R. 3211(a)(7), and without stating that the dismissals were on the merits.  Moreover, though the Siemens Defendants assure the Court that Justice Hart's issued his opinion "after careful analysis of the facts alleged in DDR's [complaint], [SSE's] Operating Agreement, and applicable New York law," (Siemens Defs.' Reply at 11), a review of that opinion, and of the Second Department's opinion affirming it, demonstrates that Justice Hart only reviewed documentary evidence to dismiss the fiduciary duty claim.  Because these dismissals were on Rule 3211(a)(7) grounds, they lack preclusive effect for purposes of *res judicata*.  *Djoganopoulos*, 67 A.D.3d at 729.

On the other hand, Justice Hart's dismissal of DDR's fiduciary duty claim against SSE was pursuant to both Rules 3211(a)(7) and 3211(a)(1).  Rule 3211(a)(1) allows dismissal on the ground that "a defense is founded upon documentary evidence."  N.Y. C.P.L.R. 3211(a)(1).  And unlike 3211(a)(7) dismissals, those based on Rule 3211(a)(1) and supporting documentary evidence are on the case's merits.  *See Feigen v. Advance Capital Mgmt. Corp.*, 146 A.D.2d 556, 557-58 (N.Y. App. Div. 1989) (finding prior 3211(a)(1) *and* (a)(7) dismissal on the merits because lower court had dismissed claim based on review of relevant contract).  Thus the fiduciary duty claim's dismissal was a merits determination, and *res judicata* would bar relitigation of a breach of fiduciary duty claim against SSE in this action.  DDR, however, does not bring any breach of fiduciary duty claim against SSE and instead asserts this claim only against Siemens, Schlesinger and First Keystone.  While *res judicata* might not go to preclusion of DDR's claims

against these defendants, as the Court concludes in the next section, collateral estoppel

does.

### c. Collateral Estoppel

The Siemens Defendants argue that DDR's claims for declaratory judgment,

breach of fiduciary duty, and negligence are collaterally estopped.  The Alison

Defendants and Rigsby, implicated only in the declaratory judgment claim, join in this

argument.  Specifically, defendants contend that in dismissing the fiduciary duty claim

against SSE, Justice Hart ruled that SSE and SFD were not joint venturers and that DDR

was not otherwise a joint venturer or member in SSE; and that therefore any claim

requiring an affirmative answer on the issue whether DDR was or is a member of or joint

venturer in SSE should be dismissed.  (Siemens Defs.' Mem. at 30-31.)

> Collateral estoppel, or issue preclusion,
>
> bars a party from relitigating in a subsequent proceeding an issue of fact or
> law that was clearly raised in a prior action where the party to be
> precluded . . . had a full and fair opportunity to litigate the issue, and a
> decision on that issue was necessary to support a valid and final judgment
> on the merits.

*Environmental Defense v. United States Environmental Protection Agency*, 369 F.3d 193,

202 (2d Cir. 2004).  The party invoking collateral estoppel must demonstrate that "(1) the

identical issue was raised in a previous proceeding; (2) the issue was actually litigated

and decided in the previous proceeding; (3) the party had a full and fair opportunity to

litigate the issue; and (4) the resolution of the issue was necessary to support a valid and

final judgment on the merits."  *Indagro S.A. v. Bauche S.A.*, 652 F. Supp. 2d 482, 486

(S.D.N.Y. 2009) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir.

25

2002)).  Because of the "strong public polic[ies] in economizing the use of judicial resources by avoiding relitigation," a district court may consider whether collateral estoppel bars relitigation of any issue connected to any of a plaintiff's claims *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

As described *supra*, DDR asserts claims predicated on sometimes one and sometimes on another version of the business structure between the parties involved in this action.  In the "DDR-in-SFD Entity" DDR is a joint venturer with Schlesinger and First Keystone in SFD; and DDR is indirectly entitled to one-third of Schlesinger's profits arising from Schlesinger's interest in SSE.  In the "DDR-in-SSE Entity" DDR is directly entitled to a share of SSE profits as a joint venturer or LLC member with Schlesinger, First Keystone, and Siemens in SSE.

In his October 5, 2009 opinion, Justice Hart wrote: "DDR did not allege sufficient facts showing that it was a partner or a fellow member with SSE.  Moreover, the documentary evidence in this case such as SSE's operating agreement and SFD's joint venture agreement *establishes that DDR lacked such status*."  *First Keystone*, 2009 WL 3415282, at *3 (emphasis added).  Affirming that ruling, the Second Department stated: "[T]he documentary evidence . . . conclusively established that DDR was not a member of SSE. . . . DDR's argument that it was an intended third-party beneficiary of the SSE operating agreement was also refuted by the documentary evidence."  *First Keystone*, 74 A.D.3d at 1137.

These rulings now preclude DDR from claiming status as a partner, member, or joint venturer in SSE.  Whether DDR was a member or partner in SSE for the purposes of its fiduciary duty claim against SSE in state court is identical to whether DDR was a

member or partner is SSE for the purposes of its claims here.  *See* 18 Wright et al.,

Federal Practice and Procedure § 4421 (2d ed. 2002) (when the controlling legal

principals and the facts involved are the same, the issues are identical for purposes of

claim preclusion).  Resolution of the issue was also necessary to Justice Hart's dismissal

of DDR's fiduciary duty claim.  "An issue is necessary to a prior judgment for issue

preclusion purposes if its disposition was the basis for the holding with respect to the

issue and not mere dictum."  *MTS, Inc. v. 200 East 87th Street Assocs.*, 899 F. Supp.

1180, 1184 (S.D.N.Y. 1995); *see also* 18 Wright et al. § 4421 (invoked issue need not be

but-for element supporting prior court's decision; instead issue must be independently

sufficient ground carefully considered by the prior court).  The reasoning behind Justice

Hart's decision was (1) that the documentary evidence established that DDR was neither

a member in SSE as an LLC nor a partner in SSE as an alleged joint venture; and (2) that

therefore SSE and DDR were not in a fiduciary relationship.  *First Keystone*, 2009 WL

3415282, at *3.  DDR not being a partner or member in SSE was the basis for Justice

Hart's holding, and was thus necessary for Justice Hart's judgment.  In addition, as a

dismissal pursuant to N.Y. C.P.L.R. 3211(a)(1), the determination was final and on the

merits.  *See Feigen*, 146 A.D.2d at 558.  Finally, considering that the issue was necessary

for Justice Hart's decision, its seems highly unlikely that DDR did not have a full and fair

opportunity to litigate the issue; in any event, DDR makes no argument that it was denied

such an opportunity.  As the elements of collateral estoppel are thus met, DDR is

precluded from relitigating the issue whether it was a member, partner, or otherwise a

joint venturer in SSE.

**2. Merits Issues**

    **a. RICO**

DDR's first count is for RICO against the Schlesinger and First Keystone Defendants, SEA, Duerlein, Volande, Krutemeier, Guddemi, and Rigsby.  All moving defendants argue that DDR cannot maintain its RICO claim because (1) its injury was not proximately caused by defendants' conduct; and (2) it cannot claim as damages the *anticipated* diminution of profits on the principal contracts, as opposed to those losses presently realized.  DDR responds that "[t]he unmistakable holding of the Second Circuit in *Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234 (2d Cir. 1996) and its progeny is that a plaintiff has standing to sue under RICO *if he was the intended victim* of a predicate act."  (Pl.'s Opp'n at 34 (emphasis added).)  DDR also argues for proximate cause, again citing *Abrahams*, by claiming that defendants intended that the conduct bring about the specific harms felt and that those harms are of the types the laws criminalizing the predicate acts are intended to prevent.  (*Id*. at 37, 39-40.)

    "RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'"  *Hemi Group, LLC v. City of New York, New York*, 130 S. Ct. 983, 987 (2010) (quoting 18 U.S.C. § 1964(c)).  Standing under RICO requires that a plaintiff "plead, at a minimum, (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (internal quotation marks omitted).  Causation, in turn, requires that "the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged."  *Id.* at 120 (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258,

268 (1992)); *First Nationwide Bank v. Gelt Funding Corp*., 27 F.3d 763, 769 (2d Cir. 1994) (RICO requires "a direct relationship between the plaintiff's injury and the defendant's injurious conduct.  This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." (internal citation and quotation marks omitted)).

Though no party cites it, the Supreme Court's January 2010 decision in *Hemi Group, LLC v. City of New York, New York*, 130 S. Ct. 983 (2010) makes absolutely clear what is required to establish proximate cause in the RICO context, and what fails to meet that requirement.  In that case Hemi, an online cigarette retailer based in New Mexico, was selling cigarettes to New York City residents.  130 S. Ct. at 987.  New York State both levied a tax on cigarette sales and authorized New York City to impose its own similar tax; and the City did so.  *Id*.  When out-of-state vendors sold to in-state residents, however, it was the City's burden to assess and recover the tax from consumers.  *Id*.  For assistance, the City relied upon the Jenkins Act, 63 Stat. 884, as amended by 69 Stat. 627. The Jenkins Act requires "out-of-state cigarette sellers to register and to file a report with [in-]state tobacco tax administrators listing the name, address, and quantity of cigarettes purchased by state residents."  *Hemi Group*, 130 S. Ct. at 987 (citing 15 U.S.C. §§ 375-378).  The State and City, in turn, had an agreement to share information relating to cigarette tax revenues.  *Id*.  The City's RICO claim was that Hemi sold cigarettes to City residents without filing Jenkins Act reports with the State; that these sales constituted a pattern of racketeering activity under RICO; and that the City lost tax revenues—its RICO "property"—by reason of that activity.  *Id*. at 987-88.

Assuming, without deciding, that Hemi's activities constituted a pattern of racketeering activity, the Court held that the City did not have RICO standing because "any injury the City suffered" was not "'*by reason of*' the alleged fraud." *Id*. at 988 (quoting 18 U.S.C. 1964(c)) (emphasis added). Reaffirming its decisions in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), and *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the Court stated, "[p]roximate cause for RICO purposes, we made clear, should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id*. at 989 (quoting *Holmes*, 503 U.S. at 268, 271, 274). The Court found the City's claim insufficiently direct for two reasons. First, in failing to meet the standards articulated in *Holmes*, the damage to the City was not the "first step" of harm caused by Hemi's conduct. *Id*. The "first step" harm was felt by the State as it was the State, not the City, that was deprived the information necessary to collect taxes by Hemi's fraud. The City's lost tax revenues resulting from that deprivation required the Court to look beyond the "first step" harm and was therefore not sufficient to establish damages under RICO. *Id*. Second, in failing to meet the standards articulated in *Anza*, the City's harm was caused by "a set of actions . . . entirely distinct from the alleged RICO violation." *Id*. at 990. Specifically, for Hemi's fraud to harm the City, the City's taxpayers had to make their own affirmative decision to not pay legally-required taxes. *Id*. In other words, "Hemi's obligation was to file the Jenkins Act reports with the State, not the City, and the City's harm was directly caused by the customers, not Hemi." *Id*.

Thus *Hemi Group* establishes twin requirements for RICO proximate causation: (1) the injury alleged must, generally, be the "first step" harm caused by the conduct invoked.  *Id*. at 989 (the "general tendency of the law, in regard to damages at least, is *not to go beyond the first step*." (emphasis added)).  And (2) the alleged conduct must be "directly responsible" for the harm alleged rather than simply allowing that harm to come about more easily.  *Id*. at 990.  Though in *Hemi Group* the disconnect was between fraud on one non-party (the State) allowing a second non-party (the taxpayers) to more easily harm the plaintiff (the City), "direct responsibility" might be lacking even when the same party violating RICO—the defendant—also perpetrates the harm on the plaintiff.  *See Anza*, 547 U.S. at 458-59 (business rival defendant's failure to charge state sales taxes, a RICO violation, not responsible for its price slashing and thereby gain of a competitive advantage over plaintiff).

At the same time, the majority of the Court *explicitly rejected*, as argued for by the dissent, any interpretation of RICO proximate cause that turned on (A) the alleged injury's foreseeability; or (B) on the intent of the defendant in causing the injury; or (C) on whether the injury falls within the set of harms Congress meant to prevent by enacting RICO or the statutes whose violations form RICO "predicate acts."  *Hemi Group*, 130 S. Ct. at 991 ("If this line of reasoning sounds familiar it should.  It is precisely the argument lodged against the majority opinion in *Anza*."); *see also id.* at 996-97 (Breyer, J., dissenting).  The Court also rejected the City's attempts first to broadly define Hemi's violation in order to assert a direct harm, and second to assert as fact in its complaint the legal conclusion that Hemi's conduct "directly caused" its injury.  *Id*. at 991-92.  Finally, and without "opin[ing] on whether" it would be possible, the Court "highlighted as

relevant" to the inquiry the question "whether better situated plaintiffs would have an incentive to sue." *Id*. at 990.[14]

The Courts of Appeals have addressed RICO proximate cause in light of *Hemi Group* only twice.  In *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121 (2d Cir. 2010), "third-party payors," or "TPPs," alleged that the drug manufacturer Eli Lilly distributed false information about prescription drugs to physicians, who therefore prescribed Lilly's drugs more often and at higher prices than they otherwise would, in turn causing the TTPs to overpay reimbursement costs for those drugs.  620 F.3d at 134.[15] The Second Circuit rejected the TPPs' characterization of the facts, and ruled proximate cause lacking.  The court found the factual situation better stated as:

> Lilly distributes misinformation about Zyprexa, physicians rely upon the misinformation and prescribe Zyprexa, TPPs relying on the advice of PBMs and their Pharmacy and Therapeutics Committees place Zyprexa on their formularies as approved drugs, TPPs fail to negotiate the price of Zyprexa below the level set by Lilly, and TPPs overpay for Zyprexa.

---

[14] Some analysis of *Holmes* and *Anza* is also warranted.  In *Holmes*, the Securities Investor Protection Corporation ("SIPC"), which was obligated to reimburse the customers of failing broker-dealers, sued certain stock manipulators under RICO and claimed, as damages, the amounts it was forced reimburse customers when the manipulators' fraud caused certain broker-dealers to fail.  503 U.S. at 261-63.  The Court held (1) that civil RICO standing requires proximate causation of the injury claimed; and (2) that SIPC's injury was not proximately caused by the conspirators' fraud because the "first step" harm was not SIPC's payments to broker-dealers' customers, but was instead the injuries to the broker-dealers' businesses.  *Id*. at 268, 271-72.  In *Anza*, one steel supplier, Ideal, sued its competitor, National, alleging that National's failure to charge New York sales taxes constituted a pattern of racketeering activity, and that that activity harmed Ideal because National was thereby able to charge lower prices and gain a competitive advantage.  547 U.S. at 454-55.  The Court held that proximate cause was lacking, finding both that several other factors might have contributed to Ideal's claimed losses, and that "[t]he direct victim of this conduct was the State of New York, not Ideal.  It was the State that was being defrauded and the State that lost tax revenue as a result."  *Id*. at 458-59.

[15] TPPs are, *inter alia*, insurance companies that pay directly for certain drugs prescribed by physicians to the TPPs' insureds; the insureds themselves do not pay.  *Eli Lilly*, 620 F.3d at 126.  What medicines will be covered by a TPP is governed by a list of approved drugs prepared by an independent company called a PBM, and adopted by each TPP individually.  *Id*.

*Id*.  Thus, without the independent actions of several parties unaffiliated with Lilly the TPPs' would not have been harmed, and TPP's injury was not proximately caused by Lilly's fraud.  *Id*.

The Ninth Circuit found an even greater disconnect in *Couch v. Cate*, 379 F. App'x 560 (9th Cir. 2010).  In that case, *inter alia*, a prison guard argued that his physical and emotional injuries, related financial costs, and a subsequent inability to find employment, were proximately caused by the California Department of Correction's ("CDC") policy of providing preferential treatment to certain prisoners known as "peacekeepers" in return for those prisoners' disciplining of the inmate population at large.  *Couch*, 379 F. App'x at 566; *see Couch v. Cate*, No. CV F 08-1621, 2009 WL 307279, at *2, *25 (E.D. Cal. Feb. 6, 2009).  Invoking their "authority," the peacekeepers had attacked a certain inmate and the prison guard plaintiff intervened, sustaining physical and emotional injuries.  *Couch*, 2009 WL 307279, at *2.  Relying on *Hemi Group* and the lower court's finding that plaintiff's injuries resulted not from the CDC's policy but from the realities of his occupation, the Ninth Circuit found, *inter alia*, plaintiff's theory of causation "far too attenuated to confer standing" under RICO. *Couch*, 379 F. App'x at 566.

With this slim guidance, the Court is left with two essential lessons from *Hemi Group*.  First, a theory of causation that either (A) requires the Court to look much beyond the "first step" of harm caused, or (B) in which the alleged violation is not "directly responsible" for the injury but rather allows it to have occurred more easily, cannot meet RICO's standing requirements.  *Hemi Group*, 130 S. Ct. at 989-90.  And second, that theories of causation based on foreseeability, on intention, or on whether the

injury alleged is of the type Congress meant to protect, *are not* sufficient for standing under RICO. *Id.* at 991.

DDR's arguments on proximate cause fail because (1) the Supreme Court in *Hemi Group* explicitly rejected all three of the measures of proximate causation DDR invokes; and (2) DDR's injury is insufficiently direct for the two reasons explained in that case. First, DDR's injuries caused by defendants' conduct were, at best, harm in the fourth step. DDR can claim its injury only as a partner in SFD and not as a member or partner in SSE; for the reasons discussed *supra*, DDR is collaterally estopped from alleging partnership or membership in SSE. And any harm to the value of SSE's NYCDEP contracts caused by payments to JR, Ostrovsky, or Guddemi was felt first by SSE, not by DDR. Before DDR can claim injury, the harm must flow through SSE; then to Schlesinger as a member in SSE; then to SFD pursuant to Schlesinger's relationship with SFD; and finally to DDR as a partner in SFD. As in *Hemi Group*, "[b]ecause [DDR's] theory of causation requires [the Court] to move well beyond the first step," and indeed to the fourth step of the harm, "that theory cannot meet RICO's direct relationship requirement." 130 S. Ct. at 989.

Second, DDR's proximate cause theory fails because defendants' RICO violations were not "directly responsible" for DDR's injury. First, to the extent that the injury's value equals amounts SSE has charged against the NYCDEP contracts in fighting investigations or litigation pursued by JR, these charges are of the type precisely rejected as a basis for proximate causation in *Anza* and *Hemi Group*. The alleged predicate acts, defrauding New York City concerning MBE and Master Electrician requirements and extorting JR, were not directly responsible for the investigation and litigation expenses.

Instead the decisions of the City and JR to pursue those avenues are the acts directly responsible for SSE's incurring of the related expenses. As "the cause of [DDR's] harm was a set of actions [(charging expenses against the contract accounts)] entirely distinct from the alleged RICO violation (defrauding the [City and extorting JR]) [t]he alleged violation . . . [did] not le[a]d directly to the plaintiff's injuries." *Hemi Group*, 130 S. Ct. at 990 (internal quotation marks and citation omitted). The same is true regarding the direct costs of the activities. For DDR to have felt any injury, several intervening acts share responsibility with defendants' pursuit of the JR and Ostrovsky schemes. For example, SSE—not facing a RICO claim from DDR—must have decided to charge the costs of its members' RICO-violating schemes against the NYCDEP contracts as opposed to elsewhere. Again, merely because defendants' predicate acts created a situation in which DDR sustained injury does not satisfy RICO's standing requirement; defendants' acts must instead have *direct responsibility* for the injury. *Id.*

Finally, there are several other parties with an incentive to sue for the violations described. As the direct target of the predicate schemes, the City seems to have such an incentive. Moreover, as any harm felt by DDR would be felt equally by Schlesinger and First Keystone as co-partners in SFD, those parties would have incentive to sue Siemens and its officers as well. Indeed, the only difference between DDR's position and that of Schlesinger and First Keystone is that DDR was, allegedly, forced out of SFD. But DDR's expulsion, or withdrawal, from SFD *is not* claimed as a predicate act, nor does it seem it could be. Any extra injury to DDR, not felt by Schlesinger or First Keystone, was caused by *that act*—its expulsion from SFD—*and not* by the predicate acts DDR

relies on to support its RICO claim.  Thus, DDR's injury is not caused by the predicate

RICO acts, but instead of by facts "entirely distinct" from those violations.

The cases and arguments DDR invokes to avoid this result are inapposite.  DDR

does not discuss *Hemi Group*, *Anza*, or *Holmes*, or any of the requirements contained in

those cases.  Instead DDR focuses on foreseeability, defendants' intent, and whether the

predicate act statutes are meant to prevent the predicate acts alleged.  But as the Supreme

Court in *Hemi Group* explicitly rejected these three measures of proximate cause, DDR

arguments based on them have no force.  *See* 130 S. Ct. at 991.  Furthermore, the cases

cited by DDR either provide no support for its position or else the rules stated in those

cases were overruled by *Hemi Group*.  *See Baisch v. Gallina*, 346 F.3d 366, 374-75 (2d

Cir. 2003) (Second Circuit finding proximate causation in the three specific measures

rejected in *Hemi Group*); *Abrahams*, 79 F.3d at 238 (not intended target); *In re American

Express Co. Shareholder Litig.*, 39 F.3d 395, 399-400 (2d Cir. 1994) (same); *Hecht v.

Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (same); *Sperber v.

Boesky*, 849 F.2d 60, 65-66 (2d Cir. 1988) (not foreseeable result).[16]

Finally, at oral argument DDR pointed to the Court to *Sykes v. Mel Harris and

Associates, LLC*, ___ F. Supp. 2d ___, 2010 WL 5395712 (S.D.N.Y. 2010), for the

proposition that "[t]here is no requirement that [DDR] be directly harmed."  (Tr. of Hr'g

of Feb. 3, 2011 ("Oral Arg. Tr."), at 49.)  In that case defendants bought portfolios of

defaulted debts and then sued plaintiff debtors in New York state court, bringing over

100,000 actions over the course of three years.  *Sykes*, 2010 WL 5395812, at *2.  After

paying a process server to "attempt" to serve process, but never actually finding out

---

[16] DDR's page-and-a-half long string cite of cases "permit[ting] such a plaintiff, or even one less directly injured [than DDR], to proceed under RICO," (Pl.'s Opp'n at 43-44), likewise does not help DDR overcome its "first step" harm and direct responsibility problems discussed here.

whether process had been served, defendants filed for default judgments.  *Id*.  After obtaining those judgments, defendants would use them to freeze plaintiffs' bank accounts and other property, and garnish plaintiffs' wages.  *Id*. at *3.  The court found that those injuries were proximately caused by the alleged fraudulent conduct.  *Id*. at *9.  While it is true that *Skyes* does not explicitly state that proximate cause under RICO requires any direct harm, *see id.* at *6, *9, the causation in that case satisfies *Hemi Group*'s requirements.  The first harm after the alleged predicate acts—defendants' enforcement of fraudulently-obtained default judgments against plaintiffs, *id*. at *9—was that plaintiffs' accounts were frozen and that plaintiffs were otherwise deprived of personal property.  In addition, those injuries required no intervening conduct on the part of any third parties.  Accordingly, reliance on *Sykes* does not rescue DDR's RICO claim.

Because DDR's injury was not proximately caused by defendants' alleged predicate acts, DDR's civil RICO claim is dismissed in its entirety as against all Moving Defendants.

### b.  Declaratory Judgment

DDR seeks a declaratory judgment that SSE was a joint venture between "[Siemens] and Schlesinger with the constituent venturers in SFD each owning 1/3 of the property interest of Schlesinger in the [SSE] venture."  (Compl. ¶ 235.)  The Siemens and Alison Defendants, and Rigsby, argue that collateral estoppel requires dismissal of DDR's declaratory judgment claim because "DDR seeks a declaratory judgment that SSE . . . actually was a 'joint venture' of which DDR was a member," but that the state courts already decided that issue against DDR.  (Siemens Defs.' Mem. at 30.)  While it is true

that Justice Hart decided that DDR was not a joint venturer in SSE, defendants misstate the judgment sought by DDR.  As the Court understands DDR's admittedly prolix and confusing complaint, DDR seeks declaratory judgment that Siemens and Schlesinger are the joint venturers in SSE but that the SFD joint venturers, including DDR, each directly own one-third of Schlesinger's interest in SSE.

The Court nevertheless declines to exercise jurisdiction over DDR's declaratory judgment claim under the principles articulated in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  *Wilton* emphasizes the district court's great discretion in choosing whether to entertain claims brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*—under which DDR brings its claim here (*see* Compl. ¶ 234)—even when the suit is otherwise jurisdictionally sufficient.  There is "nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court to hear a declaratory judgment action. By the Declaratory Judgment Act, Congress . . . created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants . . . [and] a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment."  *Wilton*, 515 U.S. at 288 (internal quotation marks and citation omitted).  In addition, "a district court may [consider and] decline jurisdiction [under *Wilton*] in a declaratory judgment action *sua sponte*."  *General Nutrition Corp. v. Charter Oak Fire Ins. Co.*, No. 07-0262, 2007 WL 2998443, at *2 (W.D. Pa. Oct. 11, 2007) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000)).

When a declaratory judgment claim in federal district court involves the same or similar issues of law and fact as a suit ongoing in state court, and when the state court is better situated to decide the claim, a district court can, and indeed should, decline

jurisdiction.  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997); *Allsettled Grp., Inc. v. Charter Oak Fire Ins. Co.*, No. 10 Civ. 150, 2010 WL 1924455, at *1 (S.D.N.Y. May. 11, 2010).  In determining whether to decline jurisdiction, the district court should consider several factors, including the scope of the state court proceeding, whether the parties affected can be satisfactorily heard in that proceeding, whether the claim in federal court is duplicative of claims in state court, whether plaintiff is forum shopping, which forum is more convenient, which action was filed first, and what law applies.  *TIG Ins. Co. v. Fairchild Corp.*, No. 07 Civ. 8250, 2008 WL 2198087, at *2 (S.D.N.Y. May 27, 2008) (Koeltl, J.).

    These factors weigh strongly in favor of declining jurisdiction in this case.  All the parties affected by DDR's declaratory judgment claim were or are parties to or otherwise involved in the Queens Action.[17]  DDR's entitlement, as a member of the SFD joint venture, to profits Schlesinger made through its participation in SSE is being contemporaneously litigated in Queens, and DDR itself has expressed its anticipation that the accountings in Queens will resolve the issue.  (*See* Oral Arg. Tr. at 48); *see also Goodman v. Goodman*, 206 F. Supp. 2d 428, 431 (W.D.N.Y. 2002) (declining jurisdiction when "[issues] challenged here have already been presented to [the state] court"); *DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 60 (E.D.N.Y. 2002) (declining jurisdiction because, *inter alia*, resolving same question in federal court as is pending in state action would result in duplicative proceedings).  And the issues raised by the declaratory judgment claim—namely whether and how DDR, a partner in a partnership, can claim a property interest in its partner's interest in a wholly separate

---

[17] It is not likely that DDR's entitlement to one-third of *Schlesinger's* entitlement to SSE profits would affect the various Siemens entities not party to the Queens Action because even if Schlesinger were required to turn over a portion of those profits to DDR, Siemens would be subject to no such requirement.

limited liability company to which that partner is joined through separate contractual agreements—are exclusively issues of New York state partnership law.  *See TIG Ins. Co.*, 2008 WL 2198087, at *3 ("Because this action raises only issues of state law, and does not implicate substantive federal law, this factor weighs heavily [for declining jurisdiction].").[18]  Accordingly, the Court declines to exercise jurisdiction over DDR's declaratory judgment claim and dismisses that claim.


### c.  Fiduciary Duty

DDR asserts its breach of fiduciary duty claim against Siemens, Schlesinger, and First Keystone.  (Compl. ¶ 237.)  Defendants argue that the claim is barred by collateral estoppel.  (*See* Siemens Defs.' Mem. at 31.)  Defendants are correct.  DDR is precluded from asserting that it is or was a member of SSE, and thus cannot claim a fiduciary relationship with SEA directly through that relationship.  And "[a]bsent extraordinary circumstances [] parties dealing at arms length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation."  *U.S. Bank. Nat'l Assoc. v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 442 (S.D.N.Y. 2010).  DDR cites no authority indicating what the circumstances would be to create a fiduciary relationship between a company (DDR) and a member of an LLC (Siemens), or between that company and a partner in a partnership, due to the company's

---

[18] The Court notes, in addition, that though it received no briefing on the merits of the declaratory judgment claim, it seems untenable that DDR could claim a property interest in the way it does.  DDR claims ownership of a portion of a limited liability company membership interest its partner, Schlesinger, owned in an entirely independent company to which Schlesinger was a member but DDR was not.  (Compl. ¶ 235.)  Under New York law, a partner has a personal property interest in its share of the profits and surpluses of the partnership to which it is a partner.  N.Y. P'ship Law § 52.  And partnership interests might be assignable or otherwise transferrable.  *See id.* § 53.  The Court can find no case, however, indicating that a member of an LLC formed under Delaware law shares its interest in that LLC with its partners in separate partnerships merely because of that latter partnership relationship.

business transactions with the LLC or partnership.  Therefore, DDR's fiduciary duty

claim against SEA is dismissed.  *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114

(S.D.N.Y. 2009) ("[C]ommercial transactions do not create fiduciary obligations, absent

express language in the contract, or a prolonged prior course of dealings between the

parties establishing the fiduciary relationship."); *see also Hammond v. The Bank of New*

*York Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *10 (S.D.N.Y. June 25,

2010) (no fiduciary duty when arms-length business counterpart defendant not under duty

to act for or give advice for plaintiff within the scope of the parties' relationship).

DDR's breach of fiduciary duty claim against Schlesinger is also dismissed.

While DDR could have alleged a breach of fiduciary duty owed by Schlesinger as a joint

venturer in SFD, it does not do so, perhaps because the issue is being litigated in the

Queens Action.  Rather DDR alleges that,

> [a]s joint venture partners, SEA, Schlesinger and [First Keystone] owed
> common law and statutory duties of fidelity and loyalty to DDR, . . .  [and]
> [a]s a joint venture partner with Schlesinger and [First Keystone] in SFD,
> DDR has partnership rights with respect to Schlesinger's interest in [SSE],
> and by virtue of that relationship [*SSE*] *and its constituent venturers*, *SEA*
> *and Schlesinger*, owed common law and statutory duties of fidelity and
> loyalty to DDR.

(Compl. ¶¶ 237, 239.)  Even under the most liberal reading of the Complaint, the actual

duty alleged is that owed by Schlesinger as a "constituent venturer[]" in SSE, and not as a

partner in SFD.  As DDR is estopped from claiming joint venturer status in SSE, DDR

does not adequately assert a fiduciary relationship with the SSE members including

Schlesinger purely due to those entities' statuses as SSE members.  DDR's fiduciary duty

claim against Schlesinger is therefore dismissed.  Because the Court may consider *sua*

*sponte* whether collateral estoppel bars plaintiffs' claims, *Pfrommer*, 148 F.3d at 80, the

Court dismisses DDR's fiduciary duty claim as against the First Keystone Defendants for the same reasons.

### d. Fraud

DDR fourth cause of action is for fraud against SEA, Schlesinger, Levita, First Keystone, and Solomon.  DDR essentially alleges two fraud claims:  First DDR alleges that First Keystone, Schlesinger, and Siemens fraudulently misrepresented facts relating to SSE—facts that they had a duty to represent truthfully based on their status as members of SSE.  (Compl. ¶¶ 244, 247 ("Defendants . . . misrepresented material facts concerning the operations of [SSE] and the Principal Contracts. . . . [Defendants] had a duty to disclose information to Plaintiff based on their status as participants in [SSE].").)  Second DDR alleges that those defendants fraudulently concealed information concerning SSE in discovery in the Queens Action.  (*Id.* ¶ 244 ("Defendants also omitted material information regarding [SSE's] operations in financial documents furnished to Plaintiff in connection with the State Court Action.").)

Under New York law, a plaintiff stating a claim for fraud must show:

> (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss.

*Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 347 (S.D.N.Y. 2010) (quoting *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 195 (N.Y. 2003)).  Moreover, "[a]llegations of fraud must meet the heightened pleading standard of Rule 9(b), which requires that the plaintiff 'state with particularity the circumstances constituting fraud.'"  *Saltz v. First*

*Frontier, LP*, No. 10 Civ. 964, 2010 WL 5298225, at *3 (S.D.N.Y. Dec. 23, 2010)

(quoting Fed. R. Civ. P. 9(b)); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (New York "[c]ommon law fraud claims must be pled with particularity in accordance with the requirements set forth in Rule 9(b)."). Thus a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).  A complaint "utterly fails [Rule 9(b)'s] requirement," however, when it "makes only the most general of allegations that [defendants] misrepresented [material facts] . . . [and] fails to allege any specific fraudulent statements or the time place, speaker, and content of the statements." *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 482 (S.D.N.Y. 2006).  A district court may consider whether a complaint complies with Rule 9(b) *sua sponte*.  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 410 (S.D.N.Y. 2009).

DDR's allegations fall far short of complying with Rule 9(b)'s requirements. Most importantly, the complaint fails to identify, as it must, a single specific misrepresentation or omission of material fact.  *Camofi Master*, 452 F. Supp. 2d at 482; *Henneberry v. Sumitomo Corp. of America*, 532 F. Supp. 2d 523, 544 (S.D.N.Y. 2007) (identifying defendants' specific statements in the complaint).  True that DDR's complaint hints at the "material facts" misrepresented or omitted "concerning the operations of [SSE] and the Principal Contracts . . . [and concerning] the truth [of defendants'] schemes, (Compl. ¶¶ 244-245).  However, because DDR "makes only the

most general of allegations" that defendants omitted facts material to SSE operations, and entirely fails to particularize any of the circumstances allegedly constituting a fraud, DDR's pleading has failed to comply with Rule 9(b). *See Camofi Master*, 452 F. Supp. 2d at 482.[19]

As the Court has raised Rule 9(b) *sua sponte*, and as DDR was therefore not given an opportunity to address the inadequacies of its complaint, the Court dismisses DDR's fraud claim without prejudice. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 305 (S.D.N.Y. 2010); *United States v. Dialysis Clinic, Inc.*, No. 5:09-CV-00710, 2011 WL 167246, at *21 (N.D.N.Y. Jan. 19, 2011).

### e.  Unjust Enrichment

DDR's fifth count is for unjust enrichment asserted against all defendants.  DDR alleges that "[d]efendants obtained funds from [SSE] through a pattern of fraud, deceit, and breach of fiduciary duty.  As much as $3,000,000 of those funds has been disbursed through improper means to Defendants. . . . [D]efendants provided no consideration in return for the transfers of funds they received."  (Compl. ¶¶ 253-254.)  DDR continues, "[d]efendants are liable to Plaintiff for unjust enrichment because . . . they participated in and profited from the wrongful expropriation of joint venture funds."  (*Id*. ¶ 256.)

Unjust enrichment under New York law requires proof that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 300

---

[19] To the extent that DDR's fraud claim asserts that material was omitted in documents furnished to it in connection with the Queens Action, this claim sounds more in a discovery dispute more properly raised in Queens than a fraud claim alleged here.  Either way, it would still fail to comply with Rule 9(b).

A.D.2d 732, 751 (N.Y. 2002)).  Defendants argue that the claim fails because DDR did not demonstrate its entitlement to any SSE funds, and therefore DDR cannot show that any enrichment of defendants came at DDR's expense.  (*See* Alison Defs.' Mem. at 8.) DDR offers no argument in response.  (*See generally* Pl.'s Opp'n.)

The Court does not reach the merits of defendants' argument because DDR's entitlement to SSE funds is dependent on it declaratory judgment claim.  When a claim "seeking monetary relief under an equitable theory of unjust enrichment[] is entirely dependent upon the Court's declaration of the parties [sic] relative rights under" plaintiff's declaratory judgment count, and when the Court dismisses the latter claim under *Wilton*, the former claim likewise fails.  *Lake Effect Inv. Corp. v. Bluso*, No. 1:06 CV 1527, 2007 WL 1231777, at *2 (N.D. Ohio Apr. 25, 2007); *Coltec Indus. Inc. v. Continental Ins. Co.*, No. Civ.A. 04-5718, 2005 WL 1126951, at *3 (E.D. Pa. May 11, 2005); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) (district court has the authority to decline jurisdiction over an equitable claim if the court otherwise has discretion over whether to entertain jurisdiction.)  For the same reasons that the Court declines to exercise jurisdiction over DDR's declaratory judgment claim, the Court dismisses DDR's unjust enrichment claim.

### f.  Civil Conspiracy

DDR's sixth count is for civil conspiracy against SEA, Deurlein, Volande, Krutemeier, the Schlesinger Defendants, the First Keystone Defendants, and Rigsby.  All moving defendants argue that DDR insufficiently pleads the claim.  (*See* Siemens Defs.' Mem. at 33.)  DDR offers no argument in response.  (*See generally* Pl.'s Opp'n.)

"Under New York law, there is no independent cause of action for civil conspiracy." *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 319 (S.D.N.Y. 2009). Instead, "civil conspiracy may be alleged for the purpose of showing that an otherwise actionable tort was committed jointly by the conspirators and that, because of the conspirators' common purpose and interest, the acts of one may be imputed to the others." *Id*. Civil conspiracy claims fail, however, where the complaint "contain[s] only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy . . . . [D]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578, 2006 WL 1096830, at *5 (S.D.N.Y. Apr. 26, 2006) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)); *see also Grove Press*, 649 F.2d at 123 ("[A] bare conclusory allegation of conspiracy does not state a cause of action."). Thus allegations such as: "'Defendants conspired to commit the wrongful acts detailed above' . . . [are] wholly conclusory, [and] cannot serve as a basis for invoking the doctrine of civil conspiracy under New York law." *Campbell v. Thales Fund Mgmt., LLC*, No. 10 Civ. 3177, 2010 WL 4455299, at *7 (S.D.N.Y. Oct. 12, 2010) (Rakoff, J.) (quoting the amended complaint). Instead, "to survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." *Fierro v. Gallucci*, No. 06-CV-5189, 2008 WL 2039545, at *16 (E.D.N.Y. May 12, 2008) (citing *Fitzgerald v. Field*, No. 99 Civ. 3406, 1999 WL 1021568, at *4 (S.D.N.Y. Nov. 9, 1999)).

DDR's civil conspiracy claim is conclusory and utterly lacks factual detail.  On its civil conspiracy claim, DDR's complaint states, *in toto*:

> 259.  [Defendants] formed a common understanding and agreement to carry out unlawful acts which harmed both the business of [SSE] and Plaintiff, both directly and indirectly.
>
> 260.  [Defendants] shared a knowing and malicious intent to injure Plaintiff and to wrongfully deprive and defraud Plaintiff of property.
>
> 261.  The conspiracy was carried out by means of fraudulent acts by [defendants] as described above, including acts done on behalf of SEA and [SSE], which were done pursuant to and in furtherance of the common understanding and agreement.
>
> 262.  As a result of Defendants' conspiracy, Plaintiff has suffered damages in an amount to be determined at trial.

(Compl. ¶¶ 259-262.)  The complaint does not state any facts indicating the what, when, where, and how of the conspiracy; and the complaint's mere conclusory allegation that "[t]he conspiracy was carried out by means of fraudulent acts by [defendants] as described above," is insufficient to survive a motion to dismiss.  *Campbell*, 2010 WL 4455299, at *7; *Ciambriello*, 292 F.3d at 325.  The complaint also fails to identify the actionable torts that were the objects of the alleged conspiracy.  Thus DDR's civil conspiracy claim is dismissed as against all moving defendants.

### g.  Conversion

DDR's seventh count is for state law conversion against all defendants.  DDR alleges that it has a property right in SSE's funds, and that by wrongfully transferring funds away from SSE for purposes other than those for which SSE was formed, defendants have converted DDR's property.  (Compl. ¶¶ 264-267.)

The elements of conversion under New York law are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *House of Diamonds v. Borgini, LLC*, 737 F. Supp. 2d 162, 167 (S.D.N.Y. 2010) (citing *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)).  To establish a possessory interest, "plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing."  *Clark Street Wine & Spirits v. Emporos Sys. Corp.*, ___ F. Supp. 2d ___, 2010 WL 4878190, at *7 (E.D.N.Y. 2010).  "An action for conversion of money may be made out where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question."  *Thys v. Fortis Sec. LLC*, 74 A.D.3d 546, 546 (N.Y. App. Div. 2010).  However, when money is the subject of a conversion claim, plaintiff must show "control of the identifiable fund," in addition to the right of possession.  *Bahiri v. Madison Realty Capital Advisors*, No. 650743/09, 2010 WL 5559404, at *2 (N.Y. Sup. Ct. Dec. 23, 2010).

Defendants argue that DDR's conversion claim fails because the extent of the NYCDEP contracts' value diminution, if any, is currently unknown and because expectancies to profits are not sufficiently tangible or identifiable to establish a property right for conversion.  (*See* Siemens Defs.' Mem. at 32.)  This argument misunderstands DDR's claim.  DDR is not alleging that defendants converted SSE's *profits*, yet unknown, on the NYCDEP contracts.  DDR instead alleges that defendants converted the sums spent in furtherance of the alleged RICO violations and other wrongful acts detailed in the complaint.  Unlike yet-to-be-earned profits, these sums are "specifically

identifiable" as required by New York law.  *See Thys*, 74 A.D.3d at 546.  The lone case

defendants rely on, an unreported table opinion, is distinguishable.  In *Grunfeld v.*

*Kasnett*, 859 N.Y.S.2d 895 (Table), 2008 WL 598351 (N.Y. Sup. Ct. Mar. 4, 2008),

plaintiffs, heirs of a deceased partner to a business, sued the co-partner defendant in 2007

for, *inter alia*, conversion.  2008 WL 598351, at *1-2.  After a dispute, the deceased

partner had demanded an accounting of the partnership in 1993.  *Id*. at *2.  When he died

in 1999, however, neither the dispute nor the accounting had been resolved.  *Id*.

Dismissing the claim on both statute of limitations and failure to state a claim grounds,

the court stated: "plaintiffs do not identify a tangible or specifically identifiable sum of

money that was the subject of conversion, claiming, instead, an amorphous sum of profits

from the MTS business to be determined upon a full accounting.  Therefore, plaintiffs fail

to state a cause of action for conversion."  *Id*. at *3 (internal quotation marks and citation

omitted).  Here, however, the allegedly converted funds—the at least $300,000 paid to

JR, the at least $80,000 paid to Guddemi, and the at least $30,000 paid to Ostrovsky,

etc.—are identifiable, not amorphous.

DDR's conversion claim is nevertheless dismissed because DDR has not

established the first element of a conversion claim, namely its possessory right or interest

in property.  DDR's vague allegations simply do not support that claim in this case.  DDR

alleges, "DDR has a property right in [SSE] and [the] profits from the Principal

Contracts.  Defendants had no authority to use [SSE] funds for any purpose other than a

legitimate purpose of [SSE]. . . . [Defendants] were receiving funds that had been

converted from [SSE]."  (Compl. ¶¶ 264-66.)  But to the extent that DDR asserts its claim

as a joint venturer or member in SSE, that claim must be dismissed—under principles of

collateral estoppel already discussed at length, it has been established that DDR was not a member or venturer in SSE.  Moreover, though the SFD Joint Venture Agreement might have granted DDR some contractual right to eventual distribution of SSE profits, DDR never had control or possession of those funds, both of which are required in an action for conversion of money under New York law.  *See Castaldi v. 39 Winfield Assocs.*, 30 A.D.3d 458, 458-59 (N.Y. App. Div. 2006) (reversing Supreme Court's denial of dismissal of conversion claim because, "[]though the plaintiff alleged a contractual right to payment . . . it never had ownership, possession, or control of the proceeds realized from the sale.").

Third, if DDR is asserting its entitlement to a portion of certain property owned by SFD through the SFD Joint Venture Agreement and SFD's contractual obligations with Schlesinger, the claim would still fail.  Under New York law, a copartner alleging conversion directly injurious to its partnership must bring that claim derivatively; partners have no standing to bring such claims directly.  *Lenz v. Associated Inns & Restaurants Co. of America*, 833 F. Supp. 362, 379-80 (S.D.N.Y. 1993).  A copartner's individual direct claim of conversion must allege "an injury that exists independently of the partnership."  *Id*. at 380.  Likewise, under Delaware law, LLC members' "direct claims are available only where the member has suffered damage that is independent of any damage suffered by the limited liability company."  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.D.2d 872, 887 (Del. Ch. 2009).  Such claims, however, are only maintainable by members of the LLC or assignees of membership interests.  *CML V, LLC v. Bax*, 6 A.D.3d 238, 241 (Del. Ch. 2010) (citing 6 Del. C. § 18-1002).  Here, DDR alleges that defendants used SSE funds for purposes improper to SSE.  The allegation is

that defendants caused SSE funds to be misappropriated from proper SSE purposes—this is an injury to SSE.  DDR could only maintain this claim on behalf SSE, something which (1) DDR does not do here; and (2) DDR could not do at all as it was not a member of SSE.  *See id*.

Fourth, even if DDR could somehow assert, through its partnership interest in SFD, some right or interest to Schlesinger's membership interest in SSE, DDR would still not gain a possessory property right in the "[SSE] funds," (compl. ¶ 265) that are the subject of DDR's conversion claim.  Under Delaware law, "the interest of a member in [a Delaware] LLC is analogous to shareholders of a corporation.  A member . . . has no interest in specific assets owned by the LLC."  *Poore v. Fox Hollow Enters.*, No. C.A. 93A-09-005, 1994 WL 150872, at *2 (Del. Super. Ct. Mar. 29, 1994) (Steele, J.); *see also Credit Suisse Sec. (USA) LLC v. West Coast Opportunity Fund, LLC*, C.A. No. 4380, 2009 WL 2356881, at *2 n.21 (Del. Ch. July 30, 2009) ("A member [of an LLC] has no interest in specific limited liability company property.") (citing 6 Del. C. § 18-701). DDR, a member of a New York partnership contractually connected to a member of a Delaware LLC, but not a member itself of that LLC, surely cannot claim a property right that that LLC member itself cannot claim.  *Cf. In re Marriott Hotel Properties II Ltd. P'ship*, No. C.A. 14961, 2000 WL 128875, at *15 & n.59 (Del. Ch. Jan. 24, 2000) (noting that analogous statutory language for Delaware limited partnerships, specifically that "[a] partner has no interest in specific limited partnership property," allows a partner to bring a conversion claim derivatively on behalf of the partnership, but not directly in its own name) (citing 6 Del. C. § 17-701).

Because DDR cannot claim the possessory property right underlying its conversion claim, that claim fails and must be dismissed.

### h.  Negligence and Negligent Entrustment

DDR's eighth count is for "negligence and negligent entrustment" against SEA. The complaint alleges that Siemens owed DDR a duty of care in handling SSE's funds, that Siemens breached that duty by allowing the actions described in the rest of the complaint to occur, and that DDR thereby suffered damages.  (*See* Compl. ¶¶ 272-274.)

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).  The duty invoked may take the form of a fiduciary duty.  *See Moscato v. Techs., Inc.*, No. 04 Civ. 2487, 2005 WL 146806, *6 (S.D.N.Y. Jan. 21, 2005).  Under New York's doctrine of negligent entrustment, on the other hand, "[t]he owner of dangerous equipment has the duty to entrust it to a person whose use will not create an unreasonable risk of harm to other persons." *Martinez v. Hitachi Constr. Mach. Co., Ltd.*, 829 N.Y.S.2d 814, 822 (N.Y. Sup. Ct. 2006) (citing *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1064 (N.Y. 2001)).  The doctrine arises in cases involving items such as guns, cars, motorboats, heavy machinery, and dangerous chemicals.  *See, e.g., Johnson v. Bryco Arms*, 304 F. Supp. 2d 383 (E.D.N.Y. 2004); *Weist v. E.I. DuPont De Nemours and Co.*, No. 05-CV-0534A, 2009 WL 791465 (W.D.N.Y. Mar. 23, 2009); *Kelly v. Di Cerbo*, 27 A.D.3d 1082 (N.Y. App. Div. 2006).

The Siemens Defendants argue that DDR cannot establish that Siemens owed any duty to it.  They are correct.  DDR's complaint is vague and conclusory regarding the first element of a negligence claim—the duty, if any, owed it by Siemens.  The complaint states: "[b]y virtue of the relationship of trust and confidence between DDR and [Siemens] which existed under the parties' arrangement, [Siemens] owed a duty of care" to DDR.  (Compl. ¶ 274.)  The complaint says nothing else; and DDR's brief is unhelpful as it does not address the issue.  The Court, interpreting the complaint's language as broadly as possible, reads the duty alleged as sounding in fiduciary duty.  *See DirecTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 439 (S.D.N.Y. 2010) (fiduciary duty owed between partners or LLC members encompassing traditional duties of loyalty and *of care*).  However, as discussed *supra*, DDR was not a joint venturer with Siemens and Siemens had no duty, fiduciary or otherwise, to DDR.  Therefore DDR cannot make out the first element of a negligence claim, and that claim is dismissed.

To the extent that DDR has intended to assert a negligent entrustment claim, it appears that DDR has misunderstood the doctrine.  Negligent entrustment requires that the owner of a dangerous instrumentality not entrust that instrumentality to some whose use of it creates an unreasonable risk of harm to other persons.  *See Rios v. Smith*, 744 N.E.2d 1156, 1158 (N.Y. 2001) (parents liable for negligent entrustment after allowing minor son to operate all-terrain-vehicle); *Kelly*, 27 A.D.3d at 1082 (same with motorboat).  The claim here is that Siemens managed SSE's funds in a negligent manner.  (Compl. ¶ 279-280 ("[Siemens] is also negligent for its negligent entrustment of funds to [other defendants]. . . . [This] created an unreasonable risk of harm to DDR's property interests.").)  In other words, DDR does not allege that there was a dangerous

instrumentality, that there was any entrustment at all, or that there was a risk of harm to any person.  Accordingly any negligent entrustment claim is dismissed.


**B.  DDR's Cross-Motions**

**1.  DDR's Cross-Motion to Dismiss Counterclaims Is Granted in Part and Denied in Part**

DDR argues that the First Keystone Defendants' counterclaims cannot be maintained because they sound in fraud and do not meet Rule 9(b)'s pleading standards. (Pl.'s Mem. at 5.)  Preliminarily, only the second counterclaim even possibly sounds in fraud.  (*See* First Keystone Defs.' Answer ¶ 202 ("Mr. Weiner worked a fraud against [SSE] and, by extension, against [First Keystone].  As a result of this scheme, DDR and Clifford Weiner breached their fiduciary duties to [SSE] and to [First Keystone].").)  As it particularizes no facts, and specifically identifies no fraudulent statements, however, this claim is insufficient under Rule 9(b) and must be dismissed.

The First Keystone Defendants respond that their counterclaim is not for fraud but for breach of fiduciary duty.  (First Keystone Defs.' Opp'n at 2.)  But as demonstrated *supra*, since DDR was not a joint venturer in SSE, it had no fiduciary relationship to SSE or the SSE partners, including First Keystone.  Thus, even if First Keystone's second counterclaim sounds in breach of fiduciary duty, it would still be dismissed.

First Keystone's first counterclaim is not for fraud but for breach of contract. (*See id.* ¶ 201.)  DDR offers no argument as to why this first counterclaim should be dismissed; therefore the claim survives.

Finally, First Keystone's third counterclaim is for the costs and litigation fees spent in defending this action.  However, "[i]n New York, the issue of attorneys fees is not the proper subject for an independent cause of action."  *Merit Grp., LLC v. Sint Maarten Int'l Telecomm. Servs. NV*, No. 08 Civ. 3496, 2009 WL 3053739, at *3 (S.D.N.Y. Sept. 24, 2009) (quoting *Terry v. Inc. Village of Patchogue*, 886 N.Y.S.2d 72, 2009 WL 1141599, at *8 (N.Y. Sup. Ct. 2009)).  Instead, "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule."  *Id*.  Thus First Keystone's third counterclaim is dismissed.

### 2.  DDR's Cross-Motion to Strike is Denied

"Under Rule 12(f), the Court may strike any 'insufficient defense or any redundant, immaterial, impertinent or scandalous matter.'"  *Coach, Inc. v. Kmart Corporations*, ___ F. Supp. 2d ___, 2010 WL 4720325, at *2 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 12(f)).  "Motions to strike are generally disfavored."  *Id.* (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)); *see also* 5C Wright et al., § 1380 ("numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.")  "[I]n order to succeed on a Rule 12(f) motion to strike surplus matter from an answer . . . [plaintiff] must [] show[] that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration . . . and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party."  5C Wright et al., § 1380.

DDR moves to strike the First Keystone Defendants' Answer on the grounds that "it is highly verbose and argumentative, and contains rather bizarre and extraneous statements that are not in the least way responsive to the allegations of the Complaint to which they purportedly respond."  (Pl.'s Mem. at 6.)  As legal support, DDR cites two Southern District cases not relevant to motions to strike but instead dismissing claims pursuant to Rule 12(b)(6), *Ruderman v. Police Dep't of the City of New York*, 857 F. Supp. 326 (S.D.N.Y. 1994), and *Raffaele v. Designers Break, Inc.*, 750 F. Supp. 611 (S.D.N.Y. 1990); and two ancient cases from without this district that are equally unhelpful, *Martin v. Hunt*, 29 F.R.D. 14 (D. Mass. 1961) (court dismissing plaintiff's amended complaint for failing to comply with Rule 8), and *Hindleman v. Specialty Salesman Magazine*, 1 F.R.D. 272 (N.D. Ill. 1940) (court granting plaintiff's motion to strike certain paragraphs of defendant's answer because they were "highly verbose and argumentative" but without providing any of the answer's text).

Having reviewed the First Keystone Defendants' Answer, the Court finds that DDR has not met the required high standard.  Indeed, DDR's own memorandum of law in support of the motion undermines any argument that the Answer is "so unrelated to [DDR's] claims as to be unworthy of any consideration."  5C Wright et al. § 1380.  For example, DDR points to the First Keystone Defendants' allegation that Weiner was himself involved in kickback schemes which resulted in his resignation from SSE's board.  (Pl.'s Mem. at 7.)  But this allegation is directly related to the factual issues involved in this case.  In addition, DDR makes no argument that allowing the Answer's allegations to remain in the proceeding will be prejudicial.  Accordingly, DDR's motion to strike the First Keystone Defendants' Answer is denied.

### 3. DDR's Cross-Motions for Sanctions Are Denied

A pleading or motion violates Rule 11 when it "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007); *see also* Fed. R. Civ. P. 11(b).  The rule "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."  *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999).  "The extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account."  *Id.*

DDR seeks sanctions against the First Keystone Defendants concerning their answer and counterclaims, and seeks leave to pursue sanctions against the Schlesinger Defendants concerning their time-bar argument regarding DDR's RICO claims.  Having reviewed the parties' submissions, the Court is prepared to give the First Keystone and Schlesinger Defendants, and their counsel, the benefit of the doubt.  First, concerning the Schlesinger Defendants' statute of limitations argument, Schlesinger counsel appears simply to have misunderstood what DDR alleged as RICO predicate acts.  (*See* Schlesinger Defs.' Mem. at 20.)  Second, concerning the First Keystone Defendants' answer and counterclaims, the Court neither finds that pleading so frivolous as to warrant sanctioning nor finds DDR's conclusory argument on the point compelling.  Thus the

Court denies DDR's cross-motion for sanctions against the First Keystone Defendants and DDR's cross-motion for leave to seek sanctions against the Schlesinger Defendants.

### C.  DDR's Letter Application for Leave to File an Amended Complaint

As a final matter, DDR seeks, by letter, leave to file an amended complaint.  This application is denied.  A party may file a motion to amended pleadings; but as with any motion made by a counseled party, the party must follow the applicable procedures set forth in the Federal Rules of Civil Procedure and the Local Civil Rules of the Southern District of New York.  Accordingly, DDR is granted leave to file a motion to amend its pleadings; but DDR is not now granted leave to amend its pleadings.[20]

## III.  CONCLUSION

For the reasons stated above:

Defendants' motions to dismiss are GRANTED.  DDR's RICO claim is dismissed as against SEA, Deurlein, Volande, Krutemeier, Schlesinger, Levita, Guddemi, and Rigsby.  DDR's civil conspiracy claim is dismissed as against SEA, Deurlein, Volande, Krutemeier, Schlesinger, Levita, Guddemi, and Rigsby.  DDR's conversion claim is dismissed as against SII, SEA, SSE, Deurlein, Volande, Krutemeier, Schlesinger, Levita, Alison, Guddemi, and Rigsby.  DDR's declaratory judgment, fiduciary duty, fraud, unjust enrichment, negligence, and negligent entrustment claims are dismissed in their entirety.  DDR's RICO, civil conspiracy, and conversion claims survive as against First Keystone

---

[20] DDR is cautioned, however, that a motion for leave to amend pleadings pursuant to Fed. R. Civ. P. 15(a)(2) will not be granted when the proposed amendment would be futile, or in other words that that amendment would not survive a motion to dismiss for failure to state a claim.  *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

and Solomon.  The dismissal of DDR's fraud claim is without prejudice to refiling that claim in compliance with Federal Rule of Civil Procedure 9(b).  The remaining dismissals are with prejudice.

DDR's cross-motion to strike and to dismiss, and for sanctions is GRANTED IN PART and DENIED IN PART.  The First Keystone Defendants' second and third counterclaims are dismissed in their entirety.  The First Keystone Defendants' first counterclaim survives in its entirety.  The First Keystone Defendants' Answer will not be stricken.  DDR's motion for sanctions is denied.

DDR's cross-motion for leave to pursue sanctions against the Schlesinger Defendants is DENIED.

DDR may file a motion for leave to amend pleadings.

The Clerk of the Court is directed to close these motions **[35]**, **[38]**, **[43]**, **[51]**, and **[60]**.


SO ORDERED


Dated: New York, New York
       March 22, 2011

_____
Richard J. Holwell
United States District Judge